The case is appeal number 23-1264 United States v. Johnson Good morning, Ms. Bonamici, whenever you're ready. May it please the Court, Deborah Bonamici on behalf of the United States. Good morning. Good morning. Your Honors, two witnesses saw the defendant possess a black handgun with a red glowing dot on it when he brandished it in front of them. One of the witnesses called 911 and provided that description to the operator. And when the police responded, they recovered from the defendant's car a black handgun equipped with a sight feature that glowed red when the gun was handled. The government sought to present the jury with the witness's testimony about what they saw and what they recovered, as well as a recording of the 911 call. But the district court ordered that the government excise from that testimony and evidence all references to the glowing red dot or the gun's sight feature. On the view that its probative value was substantially outweighed by a danger of unfair prejudice. This was a misapplication of Rule 403 and a clear abuse of discretion. The government asked this court to reverse. To begin, the district court erred by failing to take into account legally relevant factors which indicated that the probative value of the excluded evidence was substantially higher than what the district court found it to be. That evidence was directly relevant to the defendant's commission of the crime. It was related to the eyewitness testimony of the defendant's actual possession of the gun, as well as eyewitness testimony to the recovery of a gun matching the same description that was recovered from his car. Ms. Bonamici, can I ask you a question? The way I understand the way the defense is presented in the case is the defense at trial will be a credibility defense. That the witnesses are lying, essentially, that the gun was planted in the car and that the witnesses are lying. Does that enhance the probative value of the red light that the witness in the house says there's a red light on the gun and the gun that's recovered from the car, there's a red light on the gun? In other words, the defendant's defense, at least in some view, could make the probative value of the evidence here higher than it otherwise might be were that not the defense. That's absolutely the case. And that is one of the reasons that the district court did recognize that the evidence was relevant and probative to, in the court's words, corroborate the witness's testimony regarding what happened that day. Indeed, the court, later in the same opinion when ruling on the defendant's request to cross-examine the mother, Naomi Tompkins, regarding a 10-year-old theft by deception conviction, made the finding that the witness's testimony was pivotal and that their credibility was of heightened importance in the case. That's not a frivolous argument, I think, in this case. I think it was the mother who said something along the lines of, I told you not to play with me after the defendant was arrested, which, in front of a jury, that may raise credibility issues, I think. No, you're correct. There are a number of aspects of the lengthy and complicated and sometimes volatile relationship between the mother and the defendant that the defendant will definitely attempt to make full use of in cross-examining the witnesses. So that's absolutely true. The witnesses present some difficulties. There's also the point that Ms. Tompkins, the role that Ms. Tompkins played in recovering the gun. As you may recall, she went out to the car and saw the gun and pointed it out to the officers. So, yes, there's something to work with there, and the defendant has repeatedly indicated that he intends to make full use of it. So the credibility of the witnesses is of utmost importance, and that does very much heighten the importance of this. Ms. Bonamici, as I was reading these briefs, I was thinking you might want to be careful what you ask for here. We obviously are starting with a quite deferential standard of review, and if we write an opinion in your favor on this case, your office is going to be distinguishing this opinion for the next 20 years, right? When district judges make 403 calls in favor of the prosecution and against defendants. How do you suggest we frame the standard of review here? Well, Your Honor, I think in this particular case, the district court erred as a matter of law as well as in exercising her discretion. One aspect of the court's decision that is pretty clear, I think, is that her analysis of the probative value of the evidence, which was set forth in one sentence in the initial opinion and very limited just to the credibility corroboration issue, it gave no heed to any of the relevant legal factors that have been mentioned in the court's precedent. For example, whether the evidence is directly relevant to an element of the offense, whether the evidence is directly relevant to a matter that's contested by the defendant, whether the evidence is intrinsic to the actual commission of the offense, that is, it relates to a matter that's intrinsic to the defendant's commission of the offense, or the government's right to present and the jury's right to receive evidence that has descriptive richness and is a full presentation of the evidence without artificial gaps and abstractions. These are things that the court did not take into account in assessing probative value, and without a proper assessment of probative value, the court just simply was not in a position to conduct the balancing that's required under 403. This court has held in the past that where a district court errs in finding the evidence irrelevant or not relevant and not probative at all, that presents a reversible legal error, and has indicated that that does deprive the court of the ability to actually make the necessary balancing, and I think that's true in this case. I recall that in denying the government's motion for reconsideration, the court began by acknowledging the relevance of the red dot evidence, then commented on how that evidence was not central, and then at the end of a single page opinion, or memorandum opinion, said, or excuse me, minute order I guess, said, ultimately concluded that the evidence was really of no value, saying that it would serve no purpose other than to prejudice the defendant. I guess my concern is that the standard of review prevents us from reversing except in the most extreme of cases, so how was this case characterized, or I guess from your office, as an extreme case? This is an extreme case for a number of reasons, and one of them is that the nature of the offense, possession of a weapon, has just a couple of elements, right? The defendant possesses, I mean there are a couple of legal elements, but factually, the defendant possesses the weapon. The weapon itself is integral to the offense. In every case, the government presents testimony from witnesses about what they saw with respect to the weapon, elicits descriptions of the weapon, elicits the witnesses' recollections of the events that led to or that. And that's every felon in possession case? Every felon in possession case, right. And how is that extreme? Pardon me? How is that an extreme case? Because here, the court is not permitting this integral, vital evidence by eliminating this detail. This detail is just a feature of the gun. If this were, for example, if what the defendant possessed was an AR-15, a lot of people would find even just the view of an AR-15 pretty frightening and pretty, you know, terrible, right? Do we not, are we unable to present evidence to the jury of the gun that was presented or that the defendant possessed? This is, I mean, it's just, it's that specific. And here, where the probative value of this evidence is so strong and the government's need for it is so strong, it really goes beyond what is reasonable. It's also completely inconsistent with the court's process. What the government has to prove is that it's a firearm and that the individual that possessed it is a felon. So how is the fact that there is a laser sight or a red dot helping to prove that element? I guess that's where I'm, the disconnect for me. The witnesses are going to testify about what they remember seeing. First of all, they're going to be asked to artificially alter their testimony, and who knows what that will do to that presentation and the jury's observation of their demeanor and their credibility based on that alone. But normally we would assess an eyewitness's testimony by the level of detail that is presented. This one is going to be able to say it's a black handgun, which, you know, black is a color, it's something, but it's pretty nondescript. The laser sight, or not the laser sight, but the red dot that she observed is a distinguishing feature. So her credibility is enhanced simply by including that detail. The fact that that detail winds up being matched in the gun that's recovered from the defendant's car, number one, proves, it connects that gun to the earlier event, proving the defendant's connection to the gun and therefore the constructive possession of the firearm, but also enhancing the credibility of the witness who said, this is what I saw, and then looked where it turned up, you know, in the defendant's car minutes later. So this is pretty important evidence to us, and it's particularly important, as Judge Kirsch pointed out, in a case where there are some issues that the defendant can take advantage of. So this is an extreme case, and you can tell it's extreme in one sense because a number of compromises were made to get to this point, and even the appeal that we brought is quite limited. Can I, if I could, I know your time is out, but we've got a lot, there's a lot to talk about in this case. With my colleague's indulgence, one of the things that I'm wondering about is, it does seem to me that jurors are going to be pretty likely to figure out what a red dot is, that it's a laser sight. I don't know if you'd like to address that. The other thing is that you've proposed a jury instruction that said, this feature doesn't make it the gun anymore or less dangerous. I'm not sure that's actually correct. It certainly makes it easier to fire it more accurately. Let me address those two things first. I think you're right with respect to jurors who have any kind of familiarity with guns. I personally am a person who doesn't have any familiarity with guns, and to me, it might just look like an on-off light, or at least something like that. No one's going to think we're talking about a PowerPoint presentation. Pardon me? No one's going to think we're talking about a PowerPoint presentation. There are some appliances that when you touch them, when you lift them out of their holder or whatever, they shine a light. My toothbrush does that. What I'm saying is, I don't know this. I'm simply saying, for the totally uninitiated, probably not. For the initiated, probably so. We know that. We understand that. The reason it was suggested was that the judge's primary concern at the beginning was the use of the term laser, and the goal was to take laser out of the equation. With respect to the limiting instruction, I think the proper limiting instruction, the one that we would propose at this point, would be to limit the jurors' use and consideration of the evidence. To merely the question of possession. I haven't crafted it in my mind. I can't give you the exact language, but I think that is really the most important point. When the instruction was written with respect to the dangerousness, again, that was in responding to the court's concerns that it would seem like a bigger, more important, more potent, more weapon itself, the gun itself, as opposed to the use of the gun or the ability to shoot straight. But I do agree with you that if you're able to hit your target better than— If we remand this case, Ms. Bonamici, I mean, one of the things that's sort of odd about this procedural posture is it's as if negotiations are ongoing. They went on for a bit in the district court before Judge Coleman finally said no, and then you're suggesting maybe not exactly the language that's in your brief or that was talked about. If we remand, how much flexibility do you think the district judge ought to have on instruction language? I'm not sure I know what you're thinking. My concern is it sounds like you might want the discussion and the negotiations to continue, and I don't know whether that would be a productive thing or not at this point. I see where you're going. You may be right. I think that, again, I do think that the appropriate instruction deals not with the nature of the gun, which is what it is. But just limiting the use to determining the identity of any object possessed. Something like that, but yes, that's the point. I mean, bottom line, the evidence is admitted to show the identity of the gun that the defendant possessed showed the similarity between the two, between the gun recovered and the gun that was possessed. It's also relevant, as I said, more generally to just the witness's testimony about what they saw and what they recalled. And the 911 call that includes this feature is a critical piece because that was said in real time, and it's not as vulnerable to the attack that we expect from the defense. Okay, thank you, Ms. Bonamici. If the court has no further questions, we would ask the court reverse. Thank you. Mr. Ucci. Good morning. May it please the court. Your Honors, we, the defendant's appellee, Ninio Che, N-E-N-Y-E, last name U-C-H-E, stepping up on behalf of the defendant appellee. Your Honors, if reasonable minds can agree to disagree, then the district court's decision should be affirmed. The government has more than enough evidence or more than enough ample ammunition in their arsenal to prosecute this case. As it stands, the defendant is already in hot water. I would submit that to the court. He already has a situation where four different Chicago police officers are going to potentially come in front of a jury, testify that when they pulled over, they saw him in front of his car. That car is going to be registered to him. The evidence will show. The evidence will show he was next to the car. The evidence will show he was asked to step away. The evidence will show that upon searching the car at some point, one Chicago police officer identified a gun. Not only that, they also have visual evidence. The jury will be watching the body-worn camera, and they're going to see that a gun was recovered from the vehicle. Your defense, as I understand it, which you've indicated in the district court, I don't want you to say too much, okay, but I just want you to understand, is that the gun was planted by the wife or the girlfriend or the mother, I guess I should say. Judge, yes, potentially, that's one. I have a question for you. What if the gun had a silencer on it? Would the silencer be excluded? Yes, Judge. What if the gun had a banana clip? Doesn't matter. Here's why. The banana clip's out. Doesn't matter. Here's why. Doesn't matter what? It's out? Doesn't matter what the gun had because this is a simple possession of a gun by a felon. Whether or not the gun is in the vehicle, the jury's not going to get a special jurisdiction that says, hey, if the gun was found in the car, that's a different punishment. It doesn't matter what a gun was found. So let me just nail this down. Your argument is when the government charges a felon in possession of a gun, all the features of the firearm are excluded under Rule 401 and or 403. Let's say the daughter called the police and said, Mr. Johnson, whatever she calls him, has a gun with a banana clip. And the police find a gun with a banana clip, pretty descriptive, in the car. And so you now have a credibility issue. The girl in the house describes a gun with a banana clip. They find a gun with a banana clip in the car that's extremely probative, the government would argue, and therefore tends to support the argument that the defendant is guilty of possessing a firearm in the house. Your argument, and this is my concern, if we affirm here, the banana clip's out, right? The silencer is out. The AK-47 is out. We just have to describe it as a long gun, I suppose. The girl says the defendant possessed, or Mr. Johnson possessed an AK-47. That gets changed at trial to defendant possessed a long gun. Understood. Judge, I appreciate your concern, but this, I'm not saying categorically the banana clip will never come in. What I'm trying to say is back to square one, this is a case-sensitive approach. It depends on the facts of the case. But here isn't the fact of the case, as the government has argued, this is simply a feature or characteristic of the firearm that the defendant allegedly possessed. Not if the government has ample evidence. Suppose we had a situation where the police officers never saw Mr. Johnson by the car. Suppose we have a situation where the police officers never found a gun in the car. Suppose we had a situation where Mr. Johnson was just outside the house, police officers arrived, and he said, I never had a gun. That's completely different. Those are different facts. The government has less evidence to work with in that situation. So the strength of the government's case before trial, as determined by the district judge, is determinative of whether the evidence is unduly prejudicial. Clearly it's prejudicial here. Most evidence is, right? But it's unduly prejudicial the jury may decide the case on an improper basis because the government has a lot of evidence of the defendant's guilt? Judge, I don't think that's the proper analysis. I think the proper analysis is, is it central? Do they need it? And you only do that when you juxtapose it against what they already have, right? So I'm not— Boy, I mean, if that were the test, there would be a lot of evidence in criminal cases that was out. What you're telling is the district judge should strip the government's case to its bare essentials and then leave it up to the jury. Once he or she determines that that's enough evidence for the government to prove their case beyond a reasonable doubt. I'm not arguing that. I'm arguing it depends on the facts of the case. I am saying that sometimes a laser will be admitted, right, depending on how much the government has. Here they have a lot of evidence to prove the case. And what I'm also arguing is given the charges in this particular case, he's charged with possession of a gun. If the jury believes that the gun in the car was his, he's going to be convicted. If they believe the gun in the house was his, he's still going to be convicted. He doesn't get an exception based on where the gun was found. He shouldn't have a gun, presumably. And so that's the argument I'm making. It's very case specific. And your honors might, you know, and I'm not going to presume to guess what you're thinking, you might disagree as to how this was handled. And that's the point. There's a special deference with an abuse of discretion standard given to the district court. Can reasonable minds agree to disagree? And it's the defense position that they can. We talked, your honor, raised some points about it being prejudicial. In this particular case, our concern from a defense perspective is the government already has enough. The jury is going to be hearing essentially backdoor evidence of a potentially domestic abuser. They're going to be, when they hear a red dot or a laser sight, you're going to be thinking a hit man. You're going to be thinking skilled marksman. You're going to be thinking within the context of mass shootings. You're going to be thinking within the context of a mother with her children along with an assailant in the house who is aiming and pointing guns. And I think that takes it beyond the flavor of just the possession of a gun case into the flavor of domestic violence. Is there any doubt that you are going to open the door to the history of domestic disputes between these two when you would cross-examine the chief, the mother? Judge, it depends. Obviously, I want to make sure this case is a very focused case on the possession, on whether or not my- Well, you've got to attack her credibility, correct? Yes. Is there any stronger basis for attack than the history of domestic disputes that would then support your argument that maybe this gun was planted? Judge, potentially. Potentially. Potentially so. I'm not going to say it isn't so. Okay. So, okay. Go ahead. And so, Your Honors, I guess my point is it's too extreme of prejudice in this particular case because the jury is not- evidence to show that it was not corroborated, in particular the 911 call from the daughter describing the gun with a particular feature that's unique to that weapon. How is that not an abuse of discretion in this context? As you said, it's context-specific. So, how do we get around that based on your theory of defense? Understood. Judge, I will point out that that's one of my theories of defense. It depends on what happens during cross-examination. But assuming it is the only theory of defense, my position is very simple. Mr. Johnson is not being charged with having a gun with a laser. He's being charged with having a gun, period. The jury is going to hear 911 calls, two of them, where a gun is described as being a black gun. They're going to hear partial- Partial, yes. Comments from the 911 call. Correct. But enough. Where the jury hears, we saw a black gun, they're going to- The government, I'm assuming, is going to present the black gun or pictures of it that was recovered. The jury is going to watch on the screen on TV, the police officer's body-worn camera, where they discover a black gun. And if that jury believes it's the same black gun, it doesn't matter whether or not it had a laser. That's the key. Go ahead. Yes, sir. Go ahead. The presentation you're describing would conflict with your answers to Judge Kirsch earlier, right? Photographs of a gun, what kind of gun is it? Does it have a banana clip? Does it have a silencer? Does it have a bayonet attached to it, a scope? All kinds of distinguishing features. Usually, we would just hand the gun around to jurors, right? Yes. But at least they're going to see pictures. Yes. And can tie that in, in evaluating whether the witnesses had the ability to perceive and then accurately relate to them what they saw. Jana, I guess what I'm trying to say is the jury is going to see a black gun. Is it possible one member of the jury could be so sophisticated with a gun that they're able to spot without the help of an ATF agent, able to spot the pad for pressing, for triggering or manifesting the red dot? Perhaps. And that's a risk that the defendant faces. But I don't think the jury is going to be thinking that. I think they're going to be thinking, where is the black gun? And once they see a gun, something that looks like a gun, it's color black, and that's enough. I don't think the jury is going to be… I guess the trouble that I'm having, counsel, is your theory in the district court, the district court's approach to this issue, seems difficult to reconcile, at least to me, with the Supreme Court's opinion in Old Chief, the general principle that the government is not limited to a bare minimum, but basically gets to present evidence of the crime with detail, with colors added. Judge, I think, again, we're back to this case-specific approach. It depends. Like I said in the beginning, if the government didn't have enough, that would be much more fitting in terms of the Old Chief case. But this is a different type of case. The government cited a bunch of cases in their brief, and if you look closely at those cases they cited, none of them had a situation where they had enough evidence. They just didn't have it. There was a case with an older woman. She was the only one that saw the gun. There was another case where there was something about the handwriting. In those cases, the judges said, the Seventh Circuit said, there was not any other alternative evidence. In this particular case, they have enough. And that's the point I'm trying to make. I'm not saying that that's the only standard. I'm just saying when we're talking within this case-specific approach, within the facts of my case. Would you agree that if the daughter called the police and said, Mr. Johnson is in my house and has a gun with a banana clip, and then the police found a gun in his car with no banana clip, any defense lawyer worth anything, during cross-examination, would cross-examine on the characteristics of the firearm that the daughter said she saw. You described the gun as one with a banana clip. The gun found in the car did not have a banana clip. Therefore, somebody planted a gun in the car and the defendant did not possess a gun in the house. And it's just the reverse here. I think the government, with its limiting instructions, is saying, we can deal with the dangerousness of the firearm by an instruction. But it's just a characteristic of the firearm that it has this red dot, and it adds to the credibility of the witnesses, which you're going to challenge. And you've got some stuff there. I told you not to play with me. That's pretty powerful evidence when you're going to argue anything. You don't have to agree. But the mother planted the gun in the car and then said, don't play with me. I told you not to play with me. It's not a bad argument to a jury. It's not. But from our perspective, we believe that the government is already winning in this case, right? I mean, we are. I was in your position. That's off to the case that defense lawyers think at this point. They have a lot going on for them. We barely have enough. So I guess that's the main gist of my argument. All right. Thank you. Thank you very much. Thank you. All right. The case will be taken under advisement. We'll move to our sixth.